

**SO ORDERED,**

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: October 5, 2020**

**The Order of the Court is set forth below. The docket reflects the date entered.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **GINA LEHMAN** | ) | **Case No.: 20-51023-KMS** |
| | ) | |
| **Debtor.** | ) | **Chapter: 13** |
| | ) | |

**ORDER ON MOTION FOR RELIEF FROM CO-DEBTOR STAY**

This matter is before the Court on the Motion of Wilmington Savings Fund Society, FSB, as Owner Trustee of the Residential Credit Opportunities Trust V-C for relief from the co-debtor stay of 11 U.S.C. § 1301 and prospective relief from the co-debtor stay (Dkt # 20) with respect to a certain real property of the Debtor having an address of 7008 BIENVILLE DR, BILOXI, MS 39532, as more particularly described on the copy of the Deed of Trust attached hereto. Movant represented to the Court that it served the motion in accordance with all applicable rules. Co-Debtor did not file a Response to the Motion.

**ORDERED** that the Co-Debtor Stay pursuant to 11 U.S.C. § 1301 shall remain in effect and unmodified until such time as the Automatic Stay is modified as to the Debtor.

**##END OF ORDER##**

Submitted by:

/s/ Natalie Brown
Natalie Brown
MS State Bar No. 100802
Rubin Lublin, LLC
428 North Lamar Blvd, Suite 107
Oxford, MS 38655
(877) 813-0992
nbrown@rubinlublin.com
Attorney for Creditor

Deed of Trust 1615 Pg 773
Filed and Recorded Feb-08-2000 11:16:48am
2000-0003805

Loan No: [redacted]
Borrower: GINA LEHMAN

Data ID: [redacted]

PR42 
S.D 2-17-00

**RETURN TO:**
**PRESTIGE TITLE, INC.**
**STEPHEN R. COLSON, ATTORNEY**
2301 14th STREET, SUITE 580
P.O. DRAWER 720
GULFPORT, MISSISSIPPI 39502
Telephone (228) 868-0031
Telecopier (228) 868-7399

prepared by:
Return to: AEGIS MORTGAGE CORPORATION d/b/a UC LENDING
ATTENTION: LOAN SHIPPING, REG 7
8549 UNITED PLAZA BLVD.
BATON ROUGE, LA 70809
228-863-2554

[Space Above This Line For Recording Data]

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on the 31st day of January, 2000. The grantor is GINA LEHMAN AND KEVIN M. LEHMAN , HER HUSBAND ("Borrower").

The trustee is GREG FONTENOT ("Trustee").

The beneficiary is AEGIS MORTGAGE CORPORATION d/b/a UC LENDING, A CORPORATION, which is organized and existing under the laws of the State of OKLAHOMA, and whose address is 11111 WILCREST GREEN, SUITE 250, HOUSTON TX 77042 ("Lender").

Borrower owes Lender the principal sum of **THIRTY-TWO THOUSAND FIVE HUNDRED and NO/100-----Dollars (U.S. $ 32,500.00).** This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **March 1, 2030.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in **JACKSON** County, Mississippi:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

which has the address of 7008 BIENVILLE DRIVE, [Street] BILOXI, [City] Mississippi 39532 [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

KL



UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included in the term "extended coverage" and any other hazards, for which Lender requires insurance, including, but not limited to, floods or flooding, earthquakes or hurricanes (whether or not such hazards are required to be insured against at the time the Loan is made). All insurance required by Lender shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval, which shall not be unreasonably withheld. In the event the Property improvements are now, or at any time during the term of this Security Instrument are determined to be, in a Special Flood Hazard Area, Borrower must obtain and maintain flood insurance.

Borrower acknowledges and agrees that failure to insure the Property, which is the security for this agreement, according to the terms and conditions of this paragraph 5 is an event of default subject to the remedies available to Lender under this agreement. If Borrower fails to obtain or maintain any coverage described herein, Lender may, but shall have no duty to, obtain such coverage or substantially equivalent coverage with an insurance carrier of Lender's choice, protecting only Lender's interest in the Property in accordance with paragraph 7, all at Borrower's expense. Lender shall have no duty or obligation to obtain any insurance protecting Borrower's interest in the Property, or covering risks for which Lender has not required insurance, as described in the first paragraph of this paragraph 5, even if Borrower has previously obtained or maintained such insurance coverage, including, without limitation, a homeowners policy. Lender may, in its sole discretion, obtain insurance in whatever amounts and types Lender deems adequate to protect Lender's interest in the Property, regardless of the unpaid balance remaining under the Note or the amounts remaining due under this Security Instrument. For this purpose, Lender will deem its interests to be adequately protected by an insurance policy with coverage equal to the value of the improvements located on the Property securing Borrower's loan. Lender may determine the value of the improvements by assuming as accurate the value assigned to the improvements in the insurance policy that Lender's records reflect was most recently held by Borrower prior to the insurance policy obtained by Lender. Borrower acknowledges and agrees the amount may not be equal to the actual value or replacement value of the improvements, and any such insurance Lender obtains may not protect Borrower's interest in the Property.

Borrower acknowledges and agrees that the cost of the insurance coverage so obtained by Lender may significantly exceed the cost of insurance Borrower could have obtained, as described in the first paragraph of this paragraph 5, if Borrower had purchased the insurance directly, and further may provide Borrower with less or no insurance coverage protecting Borrower's interest in the Property. Borrower further acknowledges and agrees that Lender may obtain any such insurance directly or through an insurance agency or insurer affiliated with Lender and Lender or Lender's affiliate may receive a commission or other compensation in connection with obtaining such insurance.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgagee clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event that Borrower cancels a policy on the Property and Borrower replaces it with a different policy, Lender may charge Borrower a reasonable fee (subject to applicable law, if any) to change its records to reflect the new policy. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. In the event Lender acquires the Property through foreclosure or otherwise, Borrower assigns to Lender its rights to any refund of unearned premiums and any other rights of Borrower under the insurance policy.

Loan No: [redacted] Data ID: [redacted]

To the extent Borrower obtains any form of insurance coverage for the Property without being directed to do so by Lender, such as flood, earthquake or hurricane coverage, such policy shall include a standard mortgagee clause and shall name Lender as mortgagee. Any insurance proceeds from such policy shall be additional security for the Note and Lender shall have the same rights to such policy and proceeds as it has with regard to Lender-required insurance policies discussed in this paragraph 5.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if, at Lender's sole discretion, the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction. Lender shall have the right to deduct fees for such inspections from the insurance proceeds unless prohibited by applicable law or regulation. Fees for public adjusters or other third parties retained by Borrower shall not be deducted from the proceeds and shall be the sole and separate obligation of Borrower. If, in Lender's sole determination, the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. Borrower shall remain responsible for any sums remaining due and payable under the Note and this Security Instrument. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then the proceeds will be automatically assigned to Lender. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments of principal and interest due under the Note. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

The provisions contained in this paragraph 5 are subject to limitations under applicable law, if any.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

KL

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

KL

Loan No: [redacted] Data ID: [redacted]

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Following Borrower's breach of any covenant or agreement in this Security Instrument, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give Borrower, in the manner provided in paragraph 14, notice of Lender's election to sell the Property. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder for cash at such time and place in JACKSON County as Trustee designates in the notice of sale in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees of 15.00% of the sums due under the Note described above or the amount allowable under applicable state law; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. If Trustee is requested to cancel this Security Instrument, all notes evidencing debt secured by this Security Instrument shall be surrendered to Trustee. To the extent permitted by applicable law, Borrower is responsible for all costs associated with cancelling this Security Instrument including, but not limited to, any fee paid to a third party for the preparation and recordation of any legal documents as well as any fee paid to a public official.

**23. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**24. Agreement to Mediate or Arbitrate.** READ THIS AGREEMENT CAREFULLY. IT LIMITS CERTAIN OF YOUR RIGHTS, INCLUDING YOUR RIGHT TO GO TO COURT. In this agreement to mediate or arbitrate (this "Agreement"), (1) "Transaction" means any (a) payment of money, (b) transfer or exchange of property or any other thing of value, (c) any one or more past, present, or future extensions of, advertisement, solicitation, applications for, or inquiries about, credit, or forbearance of payment, such as a loan, a credit sale, or otherwise, from Lender to Borrower, including this Transaction, (d) gift, or (e) promise to enter into a Transaction, and (2) "Claim" means any case, controversy, dispute, tort, disagreement, lawsuit, claim, or counterclaim, and other matters in question now or hereafter existing between Lender and Borrower. A Claim includes, without limitation, anything arising out of, in connection with, or relating to: (a) this Agreement; (b) to the advertisement, solicitation, application, processing, closing or servicing of this Transaction or any instruments executed in conjunction with it (collectively the "Loan Agreements" including but not limited to the terms of the loan, representations, promises, undertakings or covenants made relating to the Loan, or Loan Agreements executed in conjunction with the Note and this Security Instrument, services provided under the Loan Agreements, and the validity and construction of the Loan Agreements); (c) any Transaction; (d) the construction, manufacture, advertisement, sale, installation or servicing of any real or personal property which secures this Transaction, (e) any past, present, or future insurance, service, or product that is offered or sold in connection with a Transaction; (f) any documents or instruments that contain information about or document any Transaction, insurance, service, or product; and (g) any act or omission by Lender regarding any Claim.

**Mediation.** Except as set forth below, all Claims, shall be **MEDIATED** prior to the filing of any legal proceeding related to any dispute relating to this Transaction. If Borrower and Lender cannot agree on the selection of a mediator for a dispute, the mediator shall be selected as follows: within 5 business days of the notice that either Borrower or Lender have decided to mediate, Borrower and Lender shall each name a mediator and notify that mediator and the other party of the selection. Within 5 business days of their selection the mediators shall jointly select an independent mediator to mediate the dispute. The mediation shall occur not later than 30 days after the mediator is selected at a time and place mutually convenient to all parties within a fifty-mile radius of Borrower's residence.

Borrower and Lender agree to participate in the mediation in good faith with the intention of resolving the dispute, if possible. Legal counsel may, but is not required to represent Borrower or Lender at the mediation. All mediation sessions will be private and all information disclosed during the mediation will be confidential. The mediator may prescribe other rules for the mediation. Expenses of the mediation including the mediator's fee shall be shared equally between Lender and Borrower. Attorneys' fees and related expenses are each party's responsibility.

This Agreement to mediate is specifically enforceable.

If for any reason the mediation is not completed within 45 days after the mediator is selected, or if after the mediation, any Claim is still unresolved, such Claim shall be resolved solely and exclusively by arbitration in accordance with this Agreement.

**Arbitration.** To the extent allowed by applicable law, any Claim, except those set forth below, shall be resolved by binding arbitration in accordance with (1) the Federal Arbitration Act, 9 U.S.C. §§ 1-16; (2) the Expedited Procedures of the Commercial Arbitration Rules of the American Arbitration Association (the "Arbitration Rules") then in effect; and (3) this Agreement. If the terms of this Agreement and the Arbitration Rules are inconsistent, the terms of this Agreement shall control. A copy of the Arbitration Rules, free of charge, may be obtained by calling (800) 778-7879. The laws applicable to the arbitration proceeding shall be the laws of the state in which the property which secures the Transaction is located. The parties agree that the arbitrator shall have all powers provided by law, this Agreement, and the Loan Agreements. However, the arbitrator shall have no power to vary or modify any of the provisions of the Loan Agreements. Any party to this Agreement may bring an action in any court having jurisdiction, including a summary or expedited proceeding, to specifically enforce this Agreement, or to compel arbitration of any Claim. An action to specifically enforce this Agreement, or a motion to compel arbitration may be brought at any time, even after a Claim has been raised in a court of law or a Transaction has been completed, discharged, or paid in full.

**Place of Arbitration.** The arbitration shall be conducted in the county of Borrower's residence, or at any other place mutually acceptable to the Lender and the Borrower.

**Timing of Hearing.** The arbitration hearing shall commence within forty-five (45) days of the demand for arbitration.

**NO CLASS ACTIONS; NO JOINDER OF PARTIES; WAIVER OF RIGHT TO JURY TRIAL.** THE ARBITRATION WILL TAKE THE PLACE OF ANY COURT PROCEEDING INCLUDING A TRIAL BEFORE A JUDGE OR A JUDGE AND JURY. ANY SUCH ARBITRATION SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS, AND NOT AS PART OF A COMMON OR CLASS ACTION. IT IS EXPRESSLY ACKNOWLEDGED AND AGREED BY BORROWER AND LENDER THAT ANY PURPORTED COMMON ISSUES OF LAW OR FACT SHALL BE RESOLVED ON SUCH AN INDIVIDUAL BASIS. IF THE APPOINTED ARBITRATOR SHOULD AWARD ANY DAMAGES, SUCH DAMAGES SHALL BE LIMITED TO ACTUAL AND DIRECT DAMAGES AND SHALL IN NO EVENT INCLUDE CONSEQUENTIAL, PUNITIVE, EXEMPLARY OR TREBLE DAMAGES AS TO WHICH BORROWER AND LENDER EXPRESSLY WAIVE ANY RIGHT TO CLAIM TO THE FULLEST EXTENT PERMITTED BY LAW.

**Judgment.** The award rendered by the arbitrator shall be final, nonappealable and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof.

**Confidentiality.** Borrower and Lender agree that the mediation and arbitration proceedings are confidential. The information disclosed in such proceedings cannot be used for any purpose in any other proceeding.

**Claims Excluded from Mediation and Arbitration.** Notwithstanding the foregoing, neither Borrower nor Lender can require the other to mediate or arbitrate (i) foreclosure proceedings, whether pursuant to judicial action, power of sale, assent to a decree or otherwise, proceedings pursuant to which Lender seeks a deficiency judgment, or any comparable procedures allowed under applicable law pursuant to which a lien holder may acquire title to or possession of any property which is security for this Transaction and any related personal property (including an assignment of rents or appointment of a receiver), upon default by the Borrower on the Transaction or (ii) an application by or on behalf of the Borrower for relief under the federal bankruptcy laws or any other similar laws of general application for the relief of debtors, through the institution of appropriate proceedings; or (iii) any Claim where Lender seeks damages or other relief because of Borrower's default under the terms of a Transaction. Enforcement of this section will not waive the right to arbitrate any other Claim, including a Claim asserted as a counterclaim in a lawsuit brought under this section.

**Effect of Rescission.** If Borrower has the right to rescind this Transaction, rescinding it will not rescind this Agreement.

**No Other Arbitration Agreements.** This Agreement is the only agreement between Lender and Borrower regarding alternative dispute resolution, and supersedes any prior agreements to mediate or arbitrate Claims. This Agreement may only be modified by a written agreement between Lender and Borrower.

**BORROWER AND LENDER AGREE TO WAIVE ANY RIGHTS TO TRIAL BY JURY OF ANY AND ALL CLAIMS.**

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] Other(s) [specify] | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Kevin M. Lehman (Seal)
KEVIN M. LEHMAN —Borrower

Gina Lehman (Seal)
GINA LEHMAN —Borrower

[Space Below This Line For Acknowledgment]

State of MISSISSIPPI §
County of Harrison §

Personally appeared before me, the undersigned authority in and for the said county and state, on this 31st day of January, 2000, within my jurisdiction, the within named GINA LEHMAN AND KEVIN M. LEHMAN who acknowledged that they executed the above and foregoing instrument.

(Seal)

Kelly L Marsh-Smith
Notary Public

Kelly L. Marsh-Smith
(Printed Name)

My commission expires: NOTARY PUBLIC STATE OF MISSISSIPPI AT LARGE. MY COMMISSION EXPIRES ... 2002. BONDED THRU NOTARY PUBLIC UNDERWRITERS.

Prepared by: Middleberg, Riddle & Gianna
2323 Bryan Street, Suite 1600
Dallas, Texas 75201
214/220-6300

Loan No: [redacted]
Borrower: GINA LEHMAN

Data ID: [redacted]

# ADJUSTABLE RATE RIDER

**(LIBOR 6 Month Index—Rate Caps)**

THIS ADJUSTABLE RATE RIDER is made this 31st day of January, 2000, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to AEGIS MORTGAGE CORPORATION d/b/a UC LENDING (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

7008 BIENVILLE DRIVE
BILOXI, MISSISSIPPI 39532
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **11.225 %**. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **March, 2002**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the interbank offered rates for six month United States dollar deposits in the London interbank market based on quotations of major banks, as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **SEVEN and 475/1000** percentage point(s) ( **7.475 %**) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.



KL

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **14.2250%** or less than **9.2250%**. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **ONE** percentage point(s) (**1.00 %**) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **17.2250 %** or less than **9.2250 %**.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

(Seal) KEVIN M. LEHMAN —Borrower

(Seal) GINA LEHMAN —Borrower

Deed of Trust 1615 Pg 781
Total Fees $11.00
TERRY MILLER, CHANCERY CLERK
STATE OF MISSISSIPPI - JACKSON COUNTY

ATTACHEMENT "A"

Lot Eighteen (18), LEMOYNE ESTATES SUBDIVISION, a subdivision according to a map or plat thereof which is on file and of record in the Office of the Chancery Clerk of Jackson County, State of Mississippi, in Plat Book 10 at Page 26 thereof, reference to which map or plat is here made in aid of and as a part of this description.

END OF DOCUMENT

1549 223




After Recording Return To:
PEELLE MANAGEMENT CORPORATION
ASSIGNMENT JOB #90603
P.O. BOX 1710
CAMPBELL, CA 95009-1710
1-408-866-6868

STATE OF MISSISSIPPI

COUNTY OF JACKSON

ASSIGNMENT OF DEED OF TRUST

FOR AND IN CONSIDERATION, of the sum of Ten Dollars ($10.00) cash in hand and other good and valuable consideration, the receipt of all of which is hereby acknowledged, AEGIS MORTGAGE CORPORATION d/b/a UC LENDING 11111 WILCREST GREEN, SUITE 250, HOUSTON, TX does hereby sell, transfer, set over assign and deliver, without recourse, to BANK ONE, NATIONAL ASSOCIATION, AS TRUSTEE, 1 Bank One Plaza, Suite IL1-0126 (RFC), Chicago, Illinois 60670-0126, its successors and assigns, all of its rights, title and interest, of the undersigned in and to that certain Deed of Trust dated January 31, 2000, executed by GINA LEHMAN AND KEVIN M. LEHMAN HER HUSBAND, to AEGIS MORTGAGE CORPORATION d/b/a UC LENDING, and recorded in Deed Book 1615, Page 773, instrument 2000-0003005 #, in the office of the Chancery Clerk of JACKSON County, State of Mississippi, and all written modifications thereto, if any of record, and the indebtedness secured thereby.

RECORDED 2-8-00

IN WITNESS WHEREOF, AEGIS MORTGAGE CORPORATION d/b/a UC LENDING has caused this conveyance to be signed by Richard A. Payer, its Vice President and attested to by its Assistant Secretary, Robbie Dove and its corporate seal to be hereunto affixed this the 7th day of February, 2000, to be effective 7th day of February, 2000.

AEGIS MORTGAGE CORPORATION d/b/a UC LENDING

By: ______________________
Richard A. Payer, Vice President

[CORPORATE SEAL]

ATTEST:

______________________
Robbie Dove, Assistant Secretary

STATE OF MISSISSIPPI, COUNTY OF JACKSON
I, Certify that this instrument was filed for record in my office at 1:57 o'clock P m., on the 19th day of July, 2000, and duly recorded on the 19th day of July, 2000, DT Book 1649 Page 223-225
Witness my hand and seal this 19th day of July, 2000.
Terry Miller, Chancery Clerk
By: ______________________ D.C.

STATE OF LOUISIANA
PARISH OF EAST BATON ROUGE

PERSONALLY appeared before me, the undersigned authority in and for said Parish and State aforesaid, the within named, Richard A. Payer, Vice President of AEGIS MORTGAGE CORPORATION d/b/a UC LENDING who acknowledged that for and on behalf of said corporation, (s)he signed, sealed and delivered the above and foregoing instrument on the day and in the year therein mentioned, after first having been duly authorized so to do by said corporation.

GIVEN under my hand and official seal on this the 7th day of February, 2000.

Notary Public, Dana M. Bourgeois
Commissioned in the Parish of Ascension
State Of Louisiana
My Commission Expires at Death

(Notary Seal)

Prepared by:
Stephanie Peltier
Aegis Mortgage Corporation
8549 United Plaza Blvd.
Baton Rouge, LA 70809

LEGAL: SEE ATTACHED

ATTACHEMENT "A"

Lot Eighteen (18), LEMOYNE ESTATES SUBDIVISION, a subdivision according to a map or plat thereof which is on file and of record in the Office of the Chancery Clerk of Jackson County, State of Mississippi, in Plat Book 10 at Page 26 thereof, reference to which map or plat is here made in aid of and as a part of this description.

END OF DOCUMENT

PGS

OFFICIAL RECORDS JACKSON COUNTY
Terry Miller
CHANCERY CLERK
RECORDING FEE $12.00
#200721692 BK 2609 PG:570-571
06/28/2007 02:59 PM 2 PGS
JCARULO,DC Rcpt#811844

WHEN RECORDED RETURN TO:
RESIDENTIAL FUNDING COMPANY, LLC
One Meridian Crossings
Minneapolis, MN 55423

CORPORATION ASSIGNMENT of DEED OF TRUST

RFC Loan Number:
Seller Loan Number:

**FOR VALUE RECEIVED, The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. SBM Bank One National Association as Trustee, Residential Funding Company, LLC fka Residential Funding Corporation, Attorney-In-Fact**
the undersigned hereby grants, assigns and transfers to

**Homecomings Financial, LLC**

**One Meridian Crossings, Suite 100, Minneapolis, MN 55423-3940**

all beneficial interest under that certain Deed of Trust dated 1/31/2000
executed by GINA LEHMAN AND KEVIN M LEHMAN, HER HUSBAND

TO/FOR: AEGIS MORTGAGE CORPORATION D/B/A UC LENDING , A CORPORATION

TRUSTEE:
and recorded in Book 1615 on Page 773 as Instrument No. ____________ on February 8, 2000
of official Records in the County Recorder's Office of Jackson County, Mississippi.

MORTGAGE AMOUNT: $32,500.00
TOGETHER with the note or notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to accrue under said Deed of Trust.

**The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. SBM Bank One National Association as Trustee, Residential Funding Company, LLC fka Residential Funding Corporation, Attorney-In-Fact**

BY: *Matt Favorite*
NAME: Matt Favorite
TITLE: Assistant Vice President

STATE OF Minnesota )
COUNTY OF Hennepin )

Personally appeared before me, the undersigned authority in and for the said county and state, on this day 6/11/2007, within my jurisdiction, the within named Matt Favorite, who acknowledged that he/she is Assistant Vice President of The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank, N.A. SBM Bank One National Association as Trustee, Residential Funding Company, LLC fka Residential Funding Corporation, Attorney-In-Fact a corporation, and that for and on behalf of the said corporation, and as its act and deed he/she executed the above and foregoing instrument, after first having been duly authorized by said corporation so to do.

*Ettamae Taylor*
Notary Public in and for said State

Ettamae Taylor
Notary Public - Minnesota
My Commission Expires Jan 31, 2008

This instrument was drafted by E. Taylor, Residential Funding Company, LLC, One Meridian Crossings, Suite 100, Minneapolis, MN 55423, (952) 979-4000.





Exhibit A

# EXHIBIT A

Lot Eighteen (18), Lemoyne Estates Subdivision, a subdivision according to a map or plat thereof which is on file and of record in the office of the Chancery Clerk of Jackson County, State of Mississippi, in Plat Book 10 at Page 26 thereof, reference to which map or plat is here made in aid of and as a part of this description.




# DOCUMENT RECORDING COVER SHEET

## Please record with Assignment

Prepared by:
Amber Aplara
Ocwen Loan Servicing, LLC
3451 Hammond Avenue
PO Box 780
Waterloo, IA 50704-0780
1-800-766-4622

When recorded Return to:
Priority Trustee Services of Mississippi, LLC
1587 Northeast Expressway
Atlanta Georgia 30329
770-234-9181

Assignor:
Homecomings Financial LLC
1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
1-800-766-4622

Assignee:
Wells Fargo Bank, N.A., not in its individual or banking capacity, but solely as Trustee for the Residential Mortgage Trust 2008-P1
9062 Old Annapolis Road
Columbia , MS 21045
410-290-1096

**Indexing Instructions:** Lot Eighteen (18), Lemoyne Estates Subdivision, a subdivision, Jackson County, Mississippi

File No. Lehman

Unofficial Document

Not an Official Document

~~Recording Requested By:~~

Prepared By: Amber Aplara, OCWEN LOAN SERVICING, LLC 3451 HAMMOND AVENUE, PO BOX 780, WATERLOO, IA 50704-0780 1-800-766-4622
~~When Recorded Return To:~~

CORPORATE ASSIGNMENT OF DEED OF TRUST

**Jackson, Mississippi**
**SELLER'S SERVICING #** [redacted] "LEHMAN"

Date of Assignment: June 2nd, 2014
Assignor: HOMECOMINGS FINANCIAL LLC BY OCWEN LOAN SERVICING, LLC, ITS ATTORNEY IN FACT at 1661 WORTHINGTON ROAD, SUITE 100, WEST PALM BEACH, FL 33409 Phone: 1-800-766-4622
Assignee: WELLS FARGO BANK, N.A., AS TRUSTEE NOT IN ITS INDIVIDUAL OR BANKING CAPACITY, BUT SOLEY AS TRUSTEE FOR THE RESIDENTIAL MORTGAGE TRUST 2008-P1 at ADDRESS: 9062 OLD ANNAPOLIS ROAD, COLUMBIA, MD 21045 PHONE: NA

ORIGINAL BENEFICIARY: AEGIS MORTGAGE CORPORATION DBA UC LENDING ADDRESS: 11200 WESTHEIMER RD, STE 900, HOUSTON, TX 77042 PHONE: 228-863-2554

Executed By: GINA LEHMAN AND KEVIN M. LEHMAN, HER HUSBAND at 7008 BIENVILLE DRIVE BILOXI, MS 39532 Phone: N/A
To: AEGIS MORTGAGE CORPORATION DBA UC LENDING Address: 11200 WESTHEIMER RD SUITE 900 HOUSTON, TX 77042 Phone: 228-863-2554
Date of Deed of Trust: 01/31/2000 Recorded: 02/08/2000 in Book/Reel/Liber: 1615 Page/Folio: 773 as Instrument No.: 2000-0003005 In the County of Jackson, State of Mississippi.

Property Address: 7008 BIENVILLE DRIVE, BILOXI, MS 39532

Indexing Instructions: LOT EIGHTEEN (18), LEMOYNE ESTATES SUBDIVISON
KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $32,500.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's interest under the Deed of Trust.

TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

HOMECOMINGS FINANCIAL LLC BY OCWEN LOAN SERVICING, LLC, ITS ATTORNEY IN FACT
On 6-3-14

By: [signature]
AMBER APLARA-CARRIER
Authorized Signer

CORPORATE ASSIGNMENT OF DEED OF TRUST Page 2 of 2

STATE OF Iowa
COUNTY OF Black Hawk

On 6-3-2014, before me, RACHEL MOORE, a Notary Public in and for Black Hawk in the State of Iowa, personally appeared AMBER APLARA-CARRIER, Authorized Signer, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

Rachel Moore
RACHEL MOORE
Notary Expires: 09/23/2016 #764817

RACHEL MOORE
COMMISSION NO.764817
MY COMMISSION EXPIRES
SEPTEMBER 23, 2016

(This area for notarial seal)

POWER OF ATTORNEY
ATTACHED AS EXHIBIT A

Unofficial Document



Unofficial Document

EXHIBIT A

***** LIMITED POWER OF ATTORNEY*****

**Date of POA: November 1, 2013**

**Grantor:** ETS OF VIRGINIA, INC.
ETS OF WASHINGTON, INC.
EXECUTIVE TRUSTEE SERVICES, LLC
GMAC MORTGAGE USA CORPORATION
GMAC MORTGAGE, LLC
HOMECOMINGS FINANCIAL REAL ESTATE HOLDINGS, LLC
HOMECOMINGS FINANCIAL, LLC
PATI REAL ESTATE HOLDINGS, LLC
RAHI REAL ESTATE HOLDINGS, LLC
RESIDENTIAL FUNDING COMPANY, LLC
RESIDENTIAL FUNDING REAL ESTATE HOLDINGS, LLC
RESIDENTIAL MORTGAGE REAL ESTATE HOLDINGS, LLC

**Grantee: Ocwen Loan Servicing, LLC**

**ADDRESS FOR ALL GRANTORS AND GRANTEE:**
**1661 Worthington Drive, Ste 100, West Palm Beach, FL 33409 Ph: 1-800-766-4622**

**Document was prepared by and after recorded return To:**
**Taylor Volker**
**Ocwen Loan Servicing**
**3451 HAMMOND AVE**
**WATERLOO IA 50702**

# LIMITED POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS, that effective November 1, 2013, each of the companies listed on the attached Exhibit A, or any Successor-in-Interest to same (each a "Company" and collectively the "Companies"), having a place of business as respectively indicated on Exhibit A, does hereby constitute and appoint Ocwen Loan Servicing, LLC, a Delaware limited liability company ("Ocwen"), having a place of business at 1100 Virginia Drive, Fort Washington, PA 19034, by and through its officers, its true and lawful Attorney-in-Fact in its name place and stead and for its benefits in connection with mortgage loans and mortgage loan servicing rights purchased by Ocwen pursuant to the Asset Purchase Agreement, by and among Residential Capital, LLC, Residential Funding Company, LLC, GMAC Mortgage, LLC, Executive Trustee Services, LLC, ETS of Washington, Inc., EPRE, LLC, GMACM Borrower LLC and RFC Borrower LLC, being one or more of the Companies or the Sole Member of one or more of the Companies, and Ocwen, dated as of November 2, 2012, as amended (the "Asset Purchase Agreement"), and pursuant to the Servicing, Subservicing and Servicing Transfer Agreements, by and among GMAC Mortgage, LLC, Residential Funding Company, LLC, Executive Trustee Services, LLC and ETS of Washington, Inc., being one or more of the Companies or the Sole Member of one or more of the Companies, and Ocwen, each dated as of February 15, 2013 (the "Servicing Agreements"), whereby Ocwen, as Servicer, Subservicer, or Purchaser is permitted to carry out certain servicing actions on behalf of the Companies, for the purpose of performing all acts and executing all documents in the name of the Company or Companies, or any former legal name of the Company or Companies, or any current or former trade name registered to the Company or Companies, necessary or incidental to implement the Asset Purchase Agreement and Servicing Agreements, or to take any and all action necessary to perfect the interest of Ocwen in any mortgage loan for which the servicing was acquired by Ocwen pursuant to the Asset Purchase Agreement, including but not limited to:

1. Foreclosing delinquent loans or discontinuing such foreclosure proceedings, including, but not limited to, the execution of notices of default, notices of sale, assignments of bids, and assignments of deficiency judgments, and appearing in and prosecuting and defending bankruptcy proceedings;

2. Selling, transferring or otherwise disposing of real property acquired through foreclosure or otherwise, including, but not limited to, executing all contracts, agreements, deeds, assignments or other instruments necessary to effect such sale, transfer or disposition, and receiving proceeds and endorsing checks made payable to the order of the Company or Companies from such proceedings;

3. Preparing, executing, and delivering affidavits, certifications, declarations, stipulations, waivers of any conflict of interest, verifications, proofs of claim and other bankruptcy documents, satisfactions, clearing or remedying titles to real property, cancellations, discharges, lost note instruments, or full or partial releases of lien, subordination agreements, modification agreements, assumption agreements, substitutions of trustees under deeds of trust, and UCC-3 Continuation Statements;

4. Endorsing title certificates or promissory notes and executing assignments of mortgages, deeds of trust, deeds to secure debt, and other security instruments securing said promissory notes;

Unofficial Copy

Unofficial Document

5. Endorsing insurance policies or insurance proceeds checks and mortgage payment checks to the order of the Company or Companies;

6. Executing settlement agreements, consent orders, stipulations or other consented to court documents; and

7. Any and all such other acts of any kind and nature whatsoever that are necessary or appropriate to implement the transactions contemplated by the Asset Purchase Agreement and Servicing Agreements or to take any and all action necessary to perfect the interest of Ocwen in any mortgage loan as to which the servicing was acquired by Ocwen pursuant to the Asset Purchase Agreement, including, without limitation, delegating the authority granted herein to necessary third parties such as, but not limited to, law firms or trust companies and each of their officers, directors, employees, agents and assigns.

Each Company further grants to Ocwen full power and authority to do and perform all acts necessary for Ocwen to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the Companies might or could do with the same validity as if all and every such act had been herein particularly stated, expressed and especially provided for, and hereby ratifies and confirms all that Ocwen shall lawfully do by virtue of the powers and authority granted and contemplated hereby, and all that Ocwen has previously done pursuant to or in connection with the Asset Purchase Agreement or any power of attorney previously granted by the Companies to Ocwen. This Limited Power of Attorney shall be effective November 1, 2013 and remain in full force and effect until revoked or terminated by the Companies.

Third parties without actual notice may rely upon the exercise of the power granted under this Limited Power of Attorney, and may be satisfied that this Limited Power of Attorney has not been revoked by the Companies.

SIGNATURE PAGES TO FOLLOW

Unofficial Document

**EXHIBIT A**

1. ETS of Virginia, Inc.
   3900 Westerre Parkway, Suite 300
   Richmond, VA 23233

2. ETS of Washington, Inc.
   800 Bellevue Way, NE, Suite 420
   Bellevue, WA 98004

3. Executive Trustee Services, LLC
   2255 N Ontario Street, Suite 400
   Burbank, CA 91504-3190

4. GMAC Mortgage USA Corporation
   1100 Virginia Drive, Suite 250
   Fort Washington, PA 19034

5. GMAC Mortgage, LLC
   1100 Virginia Drive, Suite 250
   Fort Washington, PA 19034

6. Homecomings Financial Real Estate Holdings, LLC
   8400 Normandale Lake Blvd, Suite 175
   Minneapolis, MN 55437

7. Homecomings Financial, LLC
   8400 Normandale Lake Blvd, Suite 175
   Minneapolis, MN 55437

8. PATI Real Estate Holdings, LLC
   1100 Virginia Drive, Suite 250
   Fort Washington, PA 19034

9. RAHI Real Estate Holdings, LLC
   3993 Howard Hughes Parkway, Suite 250
   Las Vegas, NV 89169

10. Residential Funding Company, LLC
    8400 Normandale Lake Blvd, Suite 175
    Minneapolis, MN 55437

11. Residential Funding Real Estate Holdings, LLC
    8400 Normandale Lake Blvd, Suite 175
    Minneapolis, MN 55437

12. Residential Mortgage Real Estate Holdings, LLC
    1100 Virginia Drive, Suite 250
    Fort Washington, PA 19034

ETS OF VIRGINIA, INC.
ETS OF WASHINGTON, INC.
EXECUTIVE TRUSTEE SERVICES, LLC
GMAC MORTGAGE USA CORPORATION
GMAC MORTGAGE, LLC
HOMECOMINGS FINANCIAL REAL ESTATE HOLDINGS, LLC
HOMECOMINGS FINANCIAL, LLC
PATI REAL ESTATE HOLDINGS, LLC
RAHI REAL ESTATE HOLDINGS, LLC
RESIDENTIAL FUNDING COMPANY, LLC
RESIDENTIAL FUNDING REAL ESTATE HOLDINGS, LLC
RESIDENTIAL MORTGAGE REAL ESTATE HOLDINGS, LLC
(COLLECTIVELY, THE "COMPANIES")

By: [signature]

Name: Rosa Fernandez

Title: Authorized Officer

Witness: [signature]

Name: Therese Duffy

Witness: [signature]

Name: Helen Hursser-McDermott

STATE OF Pennsylvania

COUNTY OF Montgomery

On this 18 day of Nov, 2013, before me, the undersigned, a Notary Public in and for said State and County, personally appeared Rosa Fernandez personally known to me to be the person who executed the within instrument Authorized Officer on behalf of the Companies and he or she acknowledged that said instrument is the act and deed of the Companies and that he or she, being authorized to do so, executed and delivered said instrument for the purposes therein contained

In witness hereof, I hereunto set my hand and official seal.

[signature]
Notary Public

Christine Morales
My Commission Expires 1/28/15

[Seal]

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
CHRISTINE MORALES, Notary Public
Abington Twp., Montgomery County
My Commission Expires January 28, 2015

Unofficial Document



OFFICIAL RECORDS JACKSON COUNTY
Terry Miller
CHANCERY CLERK
RECORDING FEE: $12.00
#201502056 BK:3261 PG:321-322
02/09/2015 02:37 PM 2 PGS
HROGERS,DC Rcpt#001782

# ASSIGNMENT OF DEED OF TRUST

*FOR VALUE RECEIVED*, **WELLS FARGO BANK, N.A., AS TRUSTEE OF RESIDENTIAL MORTGAGE TRUST 2008-P1, ITS SUCCESSORS AND ASSIGNS**, whose address is C/O SELENE FINANCE LP, 9990 RICHMOND AVE., SUITE 400 SOUTH, HOUSTON, TX 77042, does hereby assign and transfer to **DLJ MORTGAGE CAPITAL, INC.** whose address is c/o SELENE FINANCE LP, 9990 RICHMOND AVE, STE 400 SOUTH, HOUSTON, TX 77042, all its right, title and interest in and to the described Deed of Trust executed by **GINA LEHMAN AND KEVIN M. LEHMAN, HER HUSBAND** to **AEGIS MORTGAGE CORPORATION DBA UC LENDING** for **$32,500.00**, dated **1/31/2000** of record on **2/8/2000** in Book **1615** Page **773** as Document **2000-0003005**, in the **JACKSON** County Clerk's Office, State of **MISSISSIPPI**.

Property Address: 7008 BIENVILLE DRIVE, BILOXI, MISSISSIPPI 39532
Legal description: LOT EIGHTEEN (18), LEMOYNE ESTATES SUBDIVISION, A SUBDIVISION ACCORDING TO A MAP OR PLAT THEREOF WHICH IS ON FILE AND OF RECORD IN THE OFFICE OF THE CHANCERY CLERK OF JACKSON COUNTY, STATE OF MISSISSIPPI, IN PLAT BOOK 10 AT PAGE 26 THEREOF, REFERENCE TO WHICH MAP OR PLAT IS HERE MADE IN AID OF AND AS A PART OF THIS DESCRIPTION.
Parcel: 05911019.000

Executed this 01/26/2015.

***WELLS FARGO BANK, N.A., AS TRUSTEE OF RESIDENTIAL MORTGAGE TRUST 2008-P1**
BY AND THROUGH ITS ATTORNEY IN FACT, SELENE FINANCE LP

By: JASON BURR
Title: ASSISTANT VICE PRESIDENT

Prepared by, Recording Requested By and Return to:
Selene Finance LP
9990 Richmond Ave, Suite 400 South
Houston Tx 77042

Assignor phone number is 1-888-679-6377
Assignee phone number is 212-325-2000

**Also known as Wells Fargo Bank, N.A., not in its individual or banking capacity, but solely as Trustee for the Residential Mortgage Trust 2008-P1**

Unofficial Document

# ACKNOWLEDGMENT

STATE OF TEXAS

COUNTY OF HARRIS

Before me, the undersigned officer, on this day, personally appeared JASON BURR the ASSISTANT VICE PRESIDENT of SELENE FINANCE LP, ATTORNEY IN FACT FOR WELLS FARGO BANK, N.A., AS TRUSTEE OF RESIDENTIAL MORTGAGE TRUST 2008-P1, ITS SUCCESSORS AND ASSIGNS, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal this 01/26/20015.

Jaimee Cook

Notary Public in and for the State of TEXAS
Notary's Printed Name: JAIMEE COOK
My Commission Expires: 01/30/2016

JAIMEE COOK
Notary Public
STATE OF TEXAS
My Comm. Exp. January 30, 2016

For $32,500.00 dated 1/31/2000

Unofficial Document

OFFICIAL RECORDS JACKSON COUNTY, MS
Josh Eldridge, Chancery Clerk
Electronically Recorded
RECORDING FEE: $ 12.00
MINERAL TAX: $0.00
# 201923950
BK: 3623 PG: 74 - 76
10/25/2019 08:13:04 AM 3 PG(S)
Receipt # 23382

| Prepared by:<br>Shapiro & Massey, LLC<br>J. Gary Massey, MSB No. 1920<br>1080 River Oaks Drive, Suite B-202<br>Flowood, MS 39232<br>(601) 981-9299<br><br>S&M No. [redacted] | Return to:<br>Shapiro & Massey, LLC<br>1080 River Oaks Drive, Suite B-202<br>Flowood, MS 39232<br>(601) 981-9299<br><br>Loan No. [redacted] |
|---|---|
| Grantor<br>DLJ Mortgage Capital, Inc.<br>C/o Selene Finance, LP<br>9990 Richmond Ave, STE 400 South<br>Houston, TX 77042<br>713-625-2000 – N/A | Grantee<br>Wilmington Savings Fund Society, FSB, as trustee for<br>Stanwich Mortgage Loan Trust<br>C/o Carrington Mortgage Services, LLC<br>1600 South Douglass Road Suite 200-A<br>Anaheim, California 92806<br>800-561-4567 - N/A |

INDEX: Lot 18, Lemoyne Estates Subdivision, Jackson Co., MS

ASSIGNMENT

FOR VALUE RECEIVED, **DLJ Mortgage Capital, Inc.,** at 11 Madison Ave, 4th Floor, New York, NY 10010 Phone: (212)325-2000, does hereby transfer, sell, assign and deliver without recourse or warranty unto **Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A**, 1600 South Douglass Road, Suite 200-A, Anaheim, California 92806,800-561-4567, that certain Deed of Trust executed by Gina Lehman and Kevin M. Lehman, her husband to Aegis Mortgage Corporation d/b/a UC Lending, A corporation, as Beneficiary, on January 31, 2000, encumbering certain real property in Jackson County,

7008 Bienville Drive, Biloxi, MS 39532

Mississippi, which said Deed of Trust is recorded in Book 1615 at Page 773, and being secured by the following described property:

(See Exhibit A)

IN WITNESS THEREOF, the undersigned has executed this assignment through its duly authorized officers on this 28 day of February, 2019.

**DLJ Mortgage Capital, Inc.**

By: Destiny Nelson

Its: Vice President

CERTIFICATE OF ACKNOWLEDGEMENT

*A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document*

State of Utah)

County of Salt Lake)

On February 28, 2019 before me, Karrey Green Personally appeared Destiny Nelson, Vice President of DLJ Mortgage Capital Inc., Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Utah that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature ______________________ (Seal)
**Karrey Green**

KARREY GREEN
Notary Public State of Utah
My Commission Expires on:
August 2, 2020
Comm. Number: 690262

Exhibit "A"

Lot Eighteen (18), Lemoyne Estate Subdivision, a subdivision according to a map or plat thereof which is on file and of record in the Office of the Chancery Clerk of Jackson County, State of Mississippi, in Plat Book 10 at Page 26 thereof, reference to which map or plat is here made in aid of and as a part of this description.

OFFICIAL RECORDS JACKSON COUNTY, MS
Josh Eldridge, Chancery Clerk
Electronically Recorded
RECORDING FEE: $ 22.00
MINERAL TAX: $0.00
# 201923952
BK: 3623 PG: 77 - 77
10/25/2019 08:13:04 AM 1 PG(S)
Receipt # 23382

PREPARED BY & RETURN TO:
C. R. Hall
Residential Credit Opportunities Trust V
3020 Old Ranch Parkway, Suite 180
Seal Beach CA 90740
(888) 316-7466

**Assignment of Deed of Trust** Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST A 1600 South Douglass Road, Anaheim CA 92806 (Assignor)** by these presents does assign and set over, without recourse, to ***WILMINGTON SAVINGS FUND SOCIETY, FSB, AS OWNER TRUSTEE OF THE RESIDENTIAL*** **CREDIT OPPORTUNITIES TRUST V-C 3020 Old Ranch Parkway, Suite 180, Seal Beach CA 90740 (Assignee)** the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by **GINA LEHMAN AND KEVIN M LEHMAN, HER HUSBAND** to AEGIS MORTGAGE CORPORATION D/B/A UC LENDING, A CORPORATION. Trustee: GREG FONTENOT Said deed of trust **Dated: 1/31/2000** is recorded in the **State of MS, County of Jackson on 2/8/2000, as Book 1615 Page 773 AMOUNT: $ 32,500.00** Property Address: 7008 BIENVILLE DRIVE, BILOXI, MS 39532
LOT EIGHTEEN (18), LEMOYNE ESTATES SUBDIVISION
ASSIGNOR PHONE #:888-973-7226 ASSIGNEE PHONE #: 714-282-2424

IN WITNESS WHEREOF, the Undersigned Entity has caused this instrument to be executed as a sealed instrument by its proper signatory.
Executed on: APR 2 3 2019

WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF STANWICH MORTGAGE LOAN TRUST A BY CARRINGTON MORTGAGE SERVICES, LLC AS ITS ATTORNEY-IN-FACT*

By: Chris Lechtenski, AVP of Default for Carrington Mortgage Services, LLC, Attorney in Fact

* POA Submitted Herewith

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of Orange

On APR 2 3 2019 before me, Judit Saucedo, Notary Public, personally appeared Chris Lechtanski, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary public, Judit Saucedo
My commission expires: MAR 2 7 2021

JUDIT SAUCEDO
COMM. # 2185156
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. MARCH 27, 2021

MS Jackson

OFFICIAL RECORDS JACKSON COUNTY, MS
Josh Eldridge, Chancery Clerk
Electronically Recorded
RECORDING FEE: $ 22.00
MINERAL TAX: $0.00
# 201923951
BK: 1953 PG: 824 - 827
10/25/2019 08:13:04 AM 4 PG(S)
Receipt # 23382

I#: 2019227503 BK: 20619 PG: 1284, 07/18/2019 at 03:15 PM, RECORDING 4 PAGES $35.50 KEN BURKE, CLERK OF COURT AND COMPTROLLER PINELLAS COUNTY, FL BY DEPUTY CLERK: CLKDU10

Document drafted by and
RECORDING REQUESTED BY:
Carrington Mortgage Services, LLC
1600 South Douglass Road, Suite 200-A
Anaheim, California 92806

SPACE ABOVE THIS LINE FOR RECORDER'S USE

**LIMITED POWER OF ATTORNEY**

**Stanwich Mortgage Loan Trust A (the "Trust"),** by and through **Wilmington Savings Fund Society, FSB,** and having an office at 500 Delaware Avenue 11th Floor, Wilmington, Delaware 19801, Attention: Corporate Trust- Stanwich Mortgage Loan Trust A, not in its individual capacity but solely as trustee of Stanwich Mortgage Loan Trust A ("Trustee"), hereby constitutes and appoints Carrington Mortgage Services, LLC, ("Servicer"), and in its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of Directors of Servicer, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (5) below; provided however, that the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the Servicing and Custodial Agreement, dated as of August 11, 2015 (the "Servicing and Custodial Agreement") for the respective Trust listed on the attached Schedule A, among Stanwich Mortgage Acquisition Company IV, LLC, as initial beneficiary (the "Initial Beneficiary"), Carrington Capital Management L.L.C. as mortgage administrator (the "Mortgage Administrator"), Servicer, as servicer, Stanwich Mortgage Loan Trust A, as owner (the "Owner"), Trustee, and Wells Fargo Bank, N.A., as custodian and paying agent (the "Custodian") as supplemented on or more SUBI Supplements (as defined in the Servicing and Custodial Agreement) and no power is granted hereunder to take any action that would be adverse to the interests of Wilmington Savings Fund Society, FSB. This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") and related Properties (as defined below) held by Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A. These Loans are secured by collateral comprised of Mortgages, Deeds of Trust, Deeds to Secure Debt and other forms of security instruments (collectively the "Security Instruments") encumbering any and all real and personal property delineated therein (the "Property") and the Notes secured thereby.

1. Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee serving under a Deed of Trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale, taking deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state or local laws) and foreclosing on the properties under the Security Instruments.

2. Execute and/or file such documents and take such other action as is proper and necessary to defend Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A in litigation and resolve any litigation where the Servicer has an obligation to defend Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A.

3. Transact business of any kind regarding the Loans and the Properties, as Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A's act and deed, to contract for, purchase, lease, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4. Execute bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the borrowers and/or the Property, including but not limited to the execution of releases, satisfactions, assignments, loan modification agreements, loan assumption agreements, subordination agreements, property adjustment agreements, and other instruments pertaining to mortgages or deeds of trust, bills of sale and execution of deeds and associated and related instruments and documents necessary, if any, conveying or encumbering the Property or to effect the conveyance or release of an encumbrance on the Property, in the interest of Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A.

5. Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

Nothing contained herein shall (i) limit in any manner any indemnification provided by the Servicer to the Trustee under the Servicing and Custodial Agreement, any applicable SUBI Supplements or the Titling Trust Agreement (as defined in the Servicing and Custodial Agreement), or (ii) be construed to grant the Servicer the power to initiate or defend any suit, litigation or proceeding in the name of Wilmington Savings Fund Society, FSB in its individual capacity. If the Servicer receives any notice of suit, litigation or proceeding in the name of Wilmington Savings Fund Society, FSB in its individual capacity, then the Servicer shall promptly forward a copy of same to Wilmington Savings Fund Society, FSB, in accordance with the notice provisions of the Servicing and Custodial Agreement or the Supplements.

This Limited Power of Attorney is not intended to extend the powers granted to the Servicer under the Servicing and Custodial Agreement or the Supplements or to allow the Servicer to take any action with respect to Security Instruments or promissory notes (or other evidence of indebtedness) not authorized by the Servicing and Custodial Agreement or the Supplements.

Servicer hereby agrees to indemnify and hold Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A, and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of the exercise by the Servicer of the powers specifically granted to it under the

Servicing and Custodial Agreement or the Supplements. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the Servicing and Custodial Agreement or the Supplements or the earlier resignation or removal of Wilmington Savings Fund Society, FSB, as trustee of Stanwich Mortgage Loan Trust A under the Servicing and Custodial Agreement or the Supplements.

**Witness** my hand and seal this 20 day of June , 2019.

**NO CORPORATE SEAL**

On Behalf of the Trust, by Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as trustee of Stanwich Mortgage Loan Trust A

By: ____________________

Name: Mary Emily Pagano

Title: Trust Officer

____________________

Witness: Karen Huffman

____________________

Witness: Marcos Reyes

**CORPORATE ACKNOWLEDGMENT**

State of Delaware

County of New Castle

On this 20 day of June, 2019, before me, the undersigned, a Notary Public in and for said County and State, personally appeared Mary Emily Pagano personally known to me (or proved to me on the basis of satisfactory evidence) to be the person who executed the within instrument as Trust Officer of Wilmington Savings Fund Society, FSB, and acknowledged to me that such Federal Savings Bank executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: ____________________

ARIANA JUNE MAGUIRE
NOTARY PUBLIC, STATE OF DELAWARE
MY COMMISSION EXPIRES SEPTEMBER 11, 2019

My commission expires: September 11, 2019

**SCHEDULE A**

Stanwich Mortgage Loan Trust A